VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      22-AP-340



*Note: In the case title, an asterisk (*) indicates an appellant and a double asterisk (**) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2023

Robert E. Diaz III* v. Erin Diaz

}     APPEALED FROM:
}     Superior Court, Windham Unit,
}     Family Division
}     CASE NO. 21-DM-00613
      Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Husband appeals the spousal-maintenance portion of the final divorce order issued by the family division in this case.  We affirm.

The parties separated in March 2021 and husband filed for divorce in March 2022.  The family division held a final hearing in August 2022 and made the following findings in its November 2022 order.  Husband and wife were married in 1995 and have one child, who was born in 2006.  They are forty-nine and forty-eight years old, respectively.  The parties agreed that wife would have primary legal and physical rights and responsibilities for their son.

Husband received a two-year certificate in golf-course management from Rutgers University in 1998.  He is employed year-round as the superintendent of a golf course.  His annual income was approximately $70,000 in 2019, 2020, and 2021, and he expected to earn $78,000 in 2022.  His monthly income was approximately $6552.  He reported monthly expenses totaling $4139, which included the mortgage, taxes, and utilities for the marital home; groceries; telephone services and car insurance for himself, defendant, and their son; veterinary expenses for the family dog and cat, which were in his possession; health insurance; tobacco and alcohol; and vacation.  He also paid $729 per month in child support to wife.

Wife has a high-school diploma and is trained and certified as a child-development associate.  She works at a childcare center and at the time of the hearing earned $17.50 per hour, or $2881 per month.  She expected a raise in October 2022 that would increase her monthly income to $3400 per month, although the court found that this was "far from certain at the time of the final hearing."  Her monthly expenses totaled $3327, which included rent, electricity,

groceries, car-loan payment, and insurance. After the divorce, she would have to pay for her own telephone service and car insurance.

The parties owned a home in Whitingham that the court found to be worth $259,000. The parties owed $93,402 on their mortgage. Husband had resided in the home since the parties separated. The parties had agreed that husband could either sell the home and pay wife half of the proceeds or refinance the mortgage to pay wife her share of the equity. The court declined to discount husband's share of the equity to reflect the mortgage payments he had made since the separation, because he had the benefit of living in the home. The court found that if husband decided to stay in the home, he could rent out the basement for up to $850 per month of additional income.

The court found that the parties had a modest lifestyle and did not have excessive debts. Neither had retirement savings. At the time of the final hearing, wife owed approximately $10,000 in credit card debt for basic expenses incurred since the separation. She had borrowed $1300 from her mother and executed a formal promissory note to repay that debt. She had also borrowed $1000 from her father but did not have a formal agreement for repayment.

The court assessed the factors in 15 V.S.A. § 751 and concluded that the parties' primary asset, the marital home, should be divided equally. By June 2023, the parties were required to either offer the home for sale and share the proceeds equally, or refinance the mortgage in husband's name, with husband to pay wife $82,799.

The court found that wife was unable to meet her basic needs without some assistance from husband or support herself at the standard of living established during the marriage, and therefore was eligible for spousal maintenance. The court considered the factors set forth in 15 V.S.A. § 752(b) in determining the appropriate amount of maintenance. It found that wife's income was limited to her wages from employment and child-support payments. The child support was not intended as a substitute for maintenance. Wife was fully employed in the field in which she had worked for thirty years and had maximized her earnings in that field. The parties had a modest standard of living during the marriage but were able to afford short vacation trips, and to pay for cell-phone service and basic television service. Wife was currently unable to afford those expenses. The parties had been married for nearly twenty-six years. Both were in good health. Husband was able to meet his needs and also pay some spousal support, particularly if he chose to supplement his income by renting out the basement of the marital residence. At the time of the August 2022 hearing, wife earned $2881 per month. She expected a raise but the court found this to be uncertain. Wife's monthly expenses were $3521 and she anticipated that her rent would soon increase. The court found that inflation would continue to be significant over the next few years. It found that both parties were several years away from Social Security retirement eligibility. Based on these factors, and the guideline amount and duration of maintenance, the court determined that it was reasonable to award wife maintenance of $1000 for fifteen years, to be adjusted annually according to inflation.

On appeal, husband asserts that wife received a raise of $5.50 per hour after the final hearing. He asks this Court to decrease his monthly maintenance obligation due to wife's increased income. He also asks the Court to modify the final divorce order to state that spousal support will terminate if wife remarries. Finally, he argues that wife's monthly expenses are not

as high as she reported because son has not been participating in ski programs, and that the maintenance amount should be revised downward to reflect this.

The family division may order spousal maintenance if it finds that a spouse lacks sufficient income or property to meet their needs and is unable to support themselves at the standard of living enjoyed during the marriage. 15 V.S.A. § 752(a). The order "shall be in such amounts and for such periods of time as the court deems just, after considering all relevant factors, including" those listed in the statute. Id. § 752(b). "The family court has considerable discretion in ruling on maintenance, and the party seeking to overturn a maintenance award must show there is no reasonable basis to support the award to succeed on appeal." Golden v. Cooper-Ellis, 2007 VT 15, ¶ 47, 181 Vt. 359.

We first address husband's request that this Court modify the final order to include a provision automatically terminating his maintenance obligation in the event that wife remarries. Husband did not order a transcript of the final divorce hearing, despite this Court's warning that failure to order a transcript would mean waiving any issues for which a transcript was necessary for informed appellate review. In the absence of a transcript, we must assume that husband did not request such a provision from the family division. See In re S.B.L., 150 Vt. 294, 307 (1988) (holding that where appellant failed to order transcript, this Court had to assume that he failed to request findings of fact so that trial court had no obligation to produce such findings). "To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." State v. Ben-Mont Corp., 163 Vt. 53, 61 (1994). Because there is no evidence that husband asked the family division to include a provision terminating maintenance upon remarriage, we will not address this argument on appeal.

For a similar reason, we decline to address husband's arguments that maintenance should be modified to reflect wife's higher income and lower expenses. Both of these claims are based on events that allegedly occurred after the final divorce hearing. These facts were not part of the record on which the family division based its decision, and therefore are outside of the record on appeal. See Hoover v. Hoover, 171 Vt. 256, 258 (2000) (stating this Court's "review is confined to the record and evidence adduced at trial"); see V.R.A.P. 10(a) (confining record on appeal to items filed in trial court and any transcript of proceedings below). Husband is essentially claiming that the maintenance award should be modified based on a change in circumstances. Such an argument must be made to the family division in the first instance. 15 V.S.A. § 758 (permitting family division to modify spousal maintenance award based on showing of "real, substantial, and unanticipated change of circumstances").

Finally, husband asserts that he cannot refinance and will be forced to sell the marital home, meaning that he will not have the opportunity to rent the basement for additional income. To the extent husband is arguing that the court erred in considering the possibility of rental income in its decision, we disagree. The court was required to consider each party's opportunity for future acquisition of capital assets and income in dividing the marital property. 15 V.S.A. § 751(b). Its discussion of the potential rental income from the marital home was part of this analysis, and the court acknowledged that the availability of such income was contingent on a number of factors. Further, the court did not include the potential rental income from the basement in calculating husband's income for purposes of spousal maintenance; it only

3

considered husband's actual wages.  We therefore do not see this as a basis to reverse the spousal-maintenance award.

        <u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
William D. Cohen, Associate Justice


_____
Denise R. Johnson, Associate Justice (Ret.),
Specially Assigned
